UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JENNIFER JACKSON, Individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Case No. 2:20-cv-2310-EFM-TJJ |
| U.S. BANKCORP and U.S. BANK NATIONAL ASSOCIATION, ) ) ) ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

This FLSA collective action is before the Court on two related motions: Plaintiffs' Emergency Motion for Protective Order and for Order on Discovery Protocol (ECF No. 112) and Defendant U.S. Bank, N.A.'s Motion to Compel Discovery (ECF No. 116). Both motions raise the issue of whether this Court should permit representative written discovery (as opposed to individualized discovery served on the entire collective class), and, if so, what percentage of opt-in Plaintiffs should be served with that discovery. After the first motion was fully briefed, the Court conducted a telephone conference with counsel for the parties and advised them that it would permit representative written discovery but requested their input on the scope of representative discovery to be allowed.

Before this conference, the parties were proceeding under the Court's prior ruling in the Scheduling Order (ECF No. 40) that Defendants could serve 10 Interrogatories and 12 Requests for Production on the named Plaintiff and each opt-in Plaintiff. The Court made that decision when the case involved 82 or fewer opt-in Plaintiffs, the collective action had not yet been

1

conditionally certified, and notice had not yet been authorized to the putative collective. District Judge Eric F. Melgren overruled Plaintiffs' objection to this Court's ruling, but noted that Plaintiffs' objections were premature because the total number of opt-ins was still unknown. ECF No. 107 at 4. Since that time, the scope and complexion of the case has changed considerably, with the number of opt-in Plaintiffs increasing 15-fold to a current total of 1,242. Judge Melgren accurately anticipated that the number of opt-ins might increase, warranting an adjustment in protocol later. Because of these changes, the Court is now prepared to revisit its earlier ruling and permit only representative discovery as directed, infra.

Pursuant to the Court's instructions, the parties submitted to the Court (1) authorities regarding the appropriate percentage of opt-in Plaintiffs that should receive written discovery requests in a case of this size and nature, and (2) their positions on the development, scope, and timing of a Plaintiffs' questionnaire. The Court has reviewed the submissions and is now prepared to rule.

Plaintiffs propose that this Court should order formal written discovery based on 20% of the opt-in class, to be selected at random (or by agreement of the parties). Plaintiffs further propose that Defendants be allowed to submit a questionnaire limited to six questions to all opt-in Plaintiffs. Plaintiffs' counsel would supply all of the discovery questionnaire responses to Defendants as received, but Plaintiffs request that the Court not impose a minimum response rate for the questionnaire. Plaintiffs argue that this discovery protocol would ensure that Defendants are able to acquire information relevant to their defenses and would also prevent Plaintiffs from suffering an undue burden and expense by answering needlessly cumulative and duplicative discovery requests.

Defendants, if not allowed to pursue 100% individualized written discovery, ask the Court to require written discovery responses from 50% of the opt-ins. Defendants also ask the Court to allow written discovery in the form of a questionnaire to be sent to the remaining 50% of the opt-ins, with the understanding that no response rate would be required from the second group. Defendants' proposed questionnaire contains six of the same questions Plaintiffs' proposed questionnaire contains, plus an additional eleven questions, some of which require only a yes/no answer and some of which seek a more detailed written response.

<u>Standards for a Protective Order</u>

Plaintiffs request a protective order to limit the written discovery to which opt-in Plaintiffs must respond. Rule 26(c) affords the Court broad discretion to limit discovery where appropriate.[1] Deciding whether to grant a protective order is one way the Court may exercise that discretion.[2]

> The frequency or extent of use of the discovery methods otherwise permitted under [Federal Rules of Civil Procedure] and by any local rule shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; . . . or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.[3]

---

[1] Fed. R. Civ. P. 26(c)(1) ("The court may, for good cause, issue an order to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense.").

[2] *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 482 (10th Cir. 1995).

[3] *Geer v. Challenge Fin. Inv'rs Corp.*, No. 05-1109-JTM, 2007 WL 1341774, at *4 (D. Kan. May 4, 2007) (quoting Fed. R. Civ. P. 26).

Discovery may be cumulative or duplicative when the defendant already has access to the discovery, or it is publicly available.[4] Discovery may be unduly burdensome due to the sheer quantity of responses to review or the time it takes to do so.[5] "A party asserting an unduly burdensome objection to a discovery request has 'the burden to show facts justifying [its] objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome.'"[6] The objecting party must also show "the burden or expense

---

[4] *See Beltran v. InterExchange Inc.*, No. 14-cv-03074-CMA-KMT, 2018 WL 2045890, at *5 (D. Colo. May 2, 2018) (finding defendant's requests for documents it already had to be unnecessarily burdensome to Plaintiffs); *Aguinaga v. United Food & Commercial Workers Int'l Union*, AFL-CIO/CLC, No. CIV.A. 83-1858-FGT, 1993 WL 405964, at *3 (D. Kan. Sept. 27, 1993) ("If the defendant already has in its possession the evidence [sought through its discovery request], the discovery sought is cumulative and duplicative"); *see also Crawford v. Progessional Trans., Inc.*, No. 3:14-CV-00018-RLY, 2015 WL 5123871, at *4 (S.D. Ind. Sept. 1, 2015) ("Defendants must know this information, if for no other reason than it would have been required to issue paychecks . . . [d]efendants reasonably should know the branch each driver was located at and the driver's supervisor. These are records that are kept in the ordinary course of business."); *Goodman v. Burlington Coat Factory Warehouse Corp.*, 292 F.R.D. 230, 234 (D.N.J. 2013) ("Defendants do not need all these [discovery responses] to fully protect their interests, indeed, much of the key factual information defendants need from each plaintiff, such as their dates of employment, hours worked, supervisors and salary, is likely already in their possession and control.").

[5] *See Kutzback v. LMS Intellibound, LLC*, No. 213CV02767JTFCGC, 2020 WL 1317345, at *9 (W.D. Tenn. Mar. 17, 2020) (finding 68,000 written requests "extremely unreasonable and unnecessarily burdensome"); *Kervin v. Supreme Serv. & Specialty Co., Inc.*, No. CV 15- 01172, 2016 WL 8257256, at *5 (E.D. La. May 24, 2016) (finding 6,582 discovery requests overly burdensome); *Craig v. Rite Aid Corp.*, No. 4:08-CV-2317, 2011 WL 9686065, at *4 (M.D. Pa. Feb. 7, 2011) (finding individual discovery on 1,000 opt-in plaintiffs would be "unduly burdensome, unnecessary, and likely to undermine the interests of efficiency and fairness"); *Cranney v. Carriage Servs., Inc.*, No. 2:07-CV-01587-RLHPAL, 2008 WL 2457912, at *3 (D. Nev. June 16, 2008) ("Permitting the full scope of discovery authorized by the Federal Rules of Civil Procedure would undermine the purpose of conditionally certifying a collective action and would be unreasonably burdensome and wasteful of the parties' and the court's resources.").

[6] *Stonebarger v. Union Pac. R.R. Co.*, No. 13-2137-JAR-TJJ, 2015 WL 64980, at *5 (D. Kan. Jan. 5, 2015) (quoting *Shoemake v. McCormick, Summers & Talarico II, LLC*, No. 10-2514-RDR, 2011 WL 5553652, at *3 (D. Kan. Nov. 15, 2011)).

is unreasonable in light of the benefits to be secured from the discovery."[7] Objections that discovery is unduly burdensome "must contain a factual basis for the claim, and the objecting party must usually provide 'an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.'"[8]

Representative Discovery in Collective Actions

As the Court advised the parties during the telephone conference, the Court believes that representative written discovery in some form is justified in this case. This issue is commonly addressed in collective action cases, with courts coming down on both sides of the issue. Many courts have permitted only representative discovery in collective actions.[9] Conversely, many

---

[7] *Id.*

[8] *Id.*

[9] *See, e.g.*, *Khadera v. ABM Indus. Inc.*, No. C08-417RSM, 2011 WL 3651031, at *1 (W.D. Wash. Aug. 18, 2011), abrogated on other grounds by *Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018) (denying written discovery beyond representative sample of roughly 12% of class of 350); *Nelson v. Am. Standard, Inc.*, Nos. 2:07-cv-10-TJW-CE & 2:08-cv-390-TJW-CE, 2009 WL 4730166, at *3 (E.D. Tex. Dec. 4, 2009) (determining that "limiting discovery in an FLSA collective action to a relevant sample minimizes the burden imposed on the plaintiffs while affording the defendant a reasonable opportunity to explore, discover, and establish an evidentiary basis for its defenses"); *Cranney*, 2008 WL 2457912, at *3 (limiting discovery to the five named plaintiffs and to 10% of the relevant combination of workers and work sites for opt-in plaintiffs in a class of 300); *see also Kesley v. Entm't U.S.A. Inc.*, No. CV-14-01105-PHX, 2015 WL 4064715, at *2–3 (D. Ariz. July 2, 2015) (granting plaintiff's request for representative discovery in an FLSA collective action involving between 66 to 120 opt-in plaintiffs); *O'Toole v. Sears Roebuck & Co.*, No. 11 C 4611, 2014 WL 1388660, at *2 (N.D. Ill. Apr. 10, 2014) (thoroughly analyzing options, permitting written discovery to 33% of a collective action with more than 700 opt-ins, and commenting, "as the size of the class increases, the cases allowing individualized discovery grow fewer and farther between"); *Goodman*, 292 F.R.D. at 233 (denying individualized discovery of 572 plaintiffs, permitting discovery of 10%); *Rindfleisch v. Gentiva Health Servs., Inc.*, No. 1:10–cv–3288–SCJ, 2011 WL 7662026, at *3–5 (N.D. Ga. Dec. 29, 2011) (permitting defendant to serve written discovery upon 60 of 1,100 opt-ins); *In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*, No. 06-CV-17430WYDCBS, 2009 WL 1120293, at

courts have allowed individualized discovery in collective actions.[10] The Court finds the cases permitting only representative discovery more persuasive in the instant case. The Court recognizes that the cases cited permitting representative discovery are not binding authority on this Court whereas three of the cases utilizing individualized discovery are from the District of Kansas, which ordinarily would offer more persuasive authority for the Court. However, in the

---

*2 (D. Colo. Apr. 27, 2009) ("[Defendant] is not entitled to individualized discovery from each and every opt-in Plaintiff, but rather discovery from a certain number of Plaintiffs."); *Smith v. Lowes Home Ctrs.*, 236 F.R.D. 354, 356–58 (S.D. Ohio 2006) (allowing written discovery from a randomly-selected sample of 90 opt-in plaintiffs in an FLSA class of 1,500); *Bradford v. Bed Bath & Beyond, Inc.*, 184 F. Supp. 2d 1342, 1344 (N.D. Ga. 2002) (permitting discovery from 25 to 32 of the 300+ opt-ins).

[10] *See, e.g.*, *McFadden v. Corr. Corp. of Am.*, No. 09-2273-EFM-KGG, 2012 WL 555069, at *7 (D. Kan. Feb. 21, 2012) (granting defendant's motion to compel discovery responses from all 251 opt-in plaintiffs, noting "[t]he opt-in Plaintiffs have chosen to become parties to this action. As such, they are required to act in accordance with all relevant rules and Orders of this Court."); *Scott v. Raudin McCormick, Inc.*, No. 08-4045-EFM, 2010 WL 3125955, at *3–*6 (D. Kan. Aug. 6, 2010) (granting motion to dismiss 716 opt-in plaintiffs out of 1,500 who were served with written discovery, for failing to respond to discovery after ordered to do so); *Scott v. Raudin McCormick, Inc.*, No. 08-4045-EFM, 2010 WL 11565526, at *3–*7 (D. Kan. Jan. 28, 2010) (granting the defendant's motion to compel written discovery responses from 964 opt-in plaintiffs who failed to respond, out of approximately 1,549 served, but noting that "plaintiffs' counsel either expressly or impliedly agreed to individualized discovery and only objected when the majority of opt-in plaintiffs failed to respond to the discovery requests"); *Renfro v. Spartan Comput. Servs., Inc.*, No. 06-2284-KHV, 2008 WL 821950, at *2 (D. Kan. Mar. 26, 2008) (rejecting a bright-line rule that individualized discovery is improper in collective actions in a case of 136 opt-ins); *Abubakar v. City of Solano*, No. CIVS062268LKKEFB, 2008 WL 508911, at *2 (E.D. Cal. Feb. 22, 2008) (permitting individualized discovery for collective action of 160 employees); *Ingersoll v. Royal & Sunalliance USA, Inc.*, No. C05-1774 MAT, 2006 WL 2091097, at *1 (W.D. Wash. July 25, 2006) (permitting individualized discovery of 34 opt-in plaintiffs); *Coldiron v. Pizza Hut, Inc.*, No. CV03-05865TJHMCX, 2004 WL 2601180, at *2 (C.D. Cal. Oct. 25, 2004) (permitting individual discovery on class of 306 opt-in plaintiffs; plaintiff failed to offer specific opposition to the discovery requests); *Krueger v. N.Y. Tel. Co.*, 163 F.R.D. 446, 451 (S.D.N.Y. 1995) (permitting individualized discovery on damages as to all 162 ADEA class members); *Kaas v. Pratt & Whitney, a Consol. Subsidiary of United Techs. Corp.*, No. 89-8343-CIV-PAINE, 1991 WL 158943, at *5 (S.D. Fla. Mar. 18, 1991) (permitting individualized discovery of approximately 100 plaintiffs in ADEA case).

cases of *McFadden v. Corrections Corp. of America* and *Renfro v. Spartan Computer Services, Inc.*, far fewer opt-in plaintiffs were involved.[11] And in both *Scott v. Raudin McCormick, Inc.* opinions, the plaintiffs had initially agreed to individualized discovery; an issue arose only after some plaintiffs failed to respond to discovery.[12] These distinctions, which are fairly universal in the cases cited by Defendants, make the District of Kansas cases less helpful to the Court's decision here.[13] The significant number of opt-in Plaintiffs in this case weighs heavily in the Court's analysis. In addition, Plaintiffs have presented compelling evidence of the burden on Plaintiffs' counsel to assist with gathering written discovery responses from all opt-ins and the anticipated costs of doing so. Plaintiffs represent that, while they have responded to 1,995 discovery requests thus far, there are 24,717 requests outstanding.[14] They estimate that it would take at least 2,942.5 hours to complete the remining discovery requests, resulting in total costs of $1,113,000 at the prevailing rate of $350 per hour for an associate attorney (including 237.5 hours already expended).[15] Plaintiffs have also shown that this burden and expense is unreasonable and disproportionate considering the benefits to be secured;[16] early responses have

---

[11] 2012 WL WL 555069, at *1 (251 opt-ins); 2008 WL 821950, at *1 n.1 (136 opt-ins).

[12] 2010 WL 3125955; 2010 WL 11565526, at *4.

[13] Plaintiffs point out that all of the cases relied on by Defendants predate 2015, when the Supreme Court added considerations of proportionality into Rule 26. Plaintiffs are correct, but the Court gives this point less value because most cases cited by Plaintiffs also predate 2015. Nevertheless, the consideration of proportionality is not new; it has been part of the Federal Rules since 1983. *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

[14] ECF No. 113 at 3.

[15] *Id.* at 14.

[16] Plaintiffs' argument that the discovery must not have been important to Defendants because Defendants apparently used a paralegal (instead of an attorney) to review the responses is

shown that a high percentage of opt-in Plaintiffs fail to recollect or lack the information Defendants seek.[17] And in any event, Defendants have within their possession much of the information sought through written discovery.[18]

For these reasons, the Court determines that a protective order is warranted to limit the written discovery served on opt-in Plaintiffs. The protective order will fulfill Rule 26's direction that discovery be both relevant and proportional to the needs of the case. It will also further the purposes of the FLSA's collective action mechanism, which "allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources" and serves justice through "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity."[19]

The next question, then, is what percentage of opt-in Plaintiffs should be required to respond? In making this decision, the Court has considered a few points and concepts—some more persuasive than others.

---

unpersuasive. ECF No. 115 at 1–2; 5. The mere fact Defendants cite an affidavit from a paralegal does not justify the conclusion that counsel did not also review the documentation. More importantly, this argument unfairly suggests that paralegals do not or cannot serve an important role in litigation—a suggestion that wholly lacks foundation and is not well-taken.

[17] *See generally* ECF No. 113 at 9–13 (discussing and analyzing the data derived from responses to 855 Interrogatories and 1,140 Requests for Production).

[18] Plaintiffs estimate that 44% of the Interrogatories and 16.7% of the Requests for Production seek information and material that Defendants already know and possess. ECF No. 113 at 8.

[19] *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (discussing a collective action under the ADEA); *Smith v. Family Video Movie Club, Inc.*, No. 11 C 1773, 2012 WL 4464887, *2 (N.D. Ill. Sept. 27, 2012) (observing, in a case with 828 opt-in plaintiffs, "[I]n FLSA collective actions, permitting full-scale, individualized discovery of all opt-in plaintiffs would frequently undermine the purpose and usefulness of collective actions.") (citing *Adkins v. Mid-Am. Growers, Inc.*, 143 F.R.D. 171 (N.D. Ill. 1992)).

First, the Court has already ruled that Defendants may depose 10% of opt-in Plaintiffs. That number, therefore, serves as a baseline in this case.[20] Written discovery is less invasive and time-consuming than depositions and therefore may be sought from a higher percentage of opt-ins.

Second, the Court has considered the concept advanced by Plaintiffs—that in setting the percentage of representative discovery required, the Court should strive for a 95% confidence level and a margin-of-error rate of 10%.[21] Plaintiffs proposed use of this statistical standard in their post-telephone-conference submission, citing one case from the Southern District of Ohio that has applied the concept (*Rosenbohm v. Cellco Partnership*), and another case from the District of New Mexico (*Payne v. Tri-State CareFlight, LLC*) that summarily stated in a footnote, "The use of a 95% confidence level . . . is a scientific and industry standard."[22] Although the Court found the analysis interesting, neither of these cases is binding authority on this Court and the Court is not comfortable applying such a strict statistical analysis here. The Court notes that *Rosenbaum* involved a defendant who did not even seek individualized discovery.[23] The Court has not located Tenth Circuit courts that have applied the standard in this

---

[20] Plaintiffs cited a wide range of cases to demonstrate that courts permitting only representative discovery have often used a sample size of 10%—going so far as to suggest that this is the "norm." The Court, however, is unable to conclude that 10% is the "norm," as Defendants also cite a number of cases utilizing a higher percentage.

[21] This concept is drawn from the case *Rosenbohm v. Cellco Partnership*, No. 2:17-CV-731, 2019 WL 2141901, at *1 (S.D. Ohio May 16, 2019). For example, if 60% of a sample population answer a question "yes," then there is a 95% likelihood that between 50% to 70% of the total population would answer "yes."

[22] 332 F.R.D. 611, 684 n.31 (D.N.M. 2019) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011)).

[23] 2019 WL 2141901, at *1 ("The parties agreed that, due to proportionality concerns, only a

context, and the Court further observes that the *Payne* case also acknowledged that the Supreme Court has expressly disavowed "trials by statistics" as to liability and damages.[24] And *Payne* was a Rule 23 class action, before the court on a decision whether to certify the class—not a collective action. Indeed, it was not applying the confidence level concept at all; instead, *Payne* was explaining an improper way to use sampling in a class action trial.[25] The Court has considered this concept, but declines to use it other than as a check on the analysis it does apply, infra. Rather than simply apply a statistical formula, the Court concludes that it must take into account the specific facts and circumstances in this case.

Third, the Court considered the rulings of other courts facing similar collective action sizes and claims. Plaintiffs identified a number of cases with sample sizes around 10%.[26] Defendants, of course, identified a smaller number of cases with sample sizes in the 30% to 40% range.[27] The class sizes in the cases cited by Defendants, however, were consistently much

---

portion of the 3,875 opt-in plaintiffs would be subject to full discovery, but disagreed as to how many.").

[24] 332 F.R.D. at 684.

[25] *Id.*

[26] *See, e.g.*, *Ross v. Jack Rabbit Servs., LLC*, No. 3:14-CV-00044-DJH, 2015 WL 1565430, at *4 (W.D. Ky. Apr. 8, 2015) (limiting discovery to 10% of 236 opt-in plaintiffs); *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 188, 192 (S.D.N.Y. 2014) (ordering written discovery of 12.5% of 582 opt-ins); *Goodman*, 292 F.R.D. at 233 (permitting written discovery to 10% of 572 plaintiffs); *Khadera*, 2011 WL 3651031, at *2 (denying discovery beyond 12% of 350 opt-ins), abrogated on other grounds by *Campbell*, 903 F.3d 1090; *Nelson*, 2009 WL 4730166, at *3 (ordering discovery from roughly 7% of 1,328 opt-ins); *Cranney*, 2008 WL 2457912, at *2 (limiting discovery to 10% of 300); *Smith*, 236 F.R.D. at 356 (ordering discovery from a representative sample 6% of 1500+ opt-in plaintiffs); *Bradford*, 184 F. Supp. 2d at 1344 (permitting discovery from about 8–10% of 300+ opt-ins).

[27] *See, e.g.*, *Boudreaux v. Schlumberger Tech Corp.*, No. CV 14-2267, 2016 WL 4626591, at *1 (W.D. La. Sept. 1, 2016) (requiring written discovery responses from 30% of 301 opt-ins);

smaller than the collective group here.

Most persuasive to the Court is the general concept that as the class size increases, the dictates of proportionality warrant a lower percentage of required discovery responses.[28] Notably, while many courts have applied percentages in the 10% range, in those cases where there were more than 1,000 members, courts applied lower percentages of 6% and 7%.[29] The Court, however, regards 10% as the low bar and starting point in this case, which should be increased somewhat here because of the many business units (60) and locations (40 cities in 20 states) involved. Taking into account proportionality concerns, the significant number of opt-in Plaintiffs in this case, the great weight of authorities cited, and the unique variables in this case, the Court finds that Plaintiffs' proposed sample size of 20% of the collective, or 248 opt-ins, is reasonable and appropriate.[30] This sample shall be drawn from across all locations and business units. As explained below, the sample will be further supplemented by the use of a short questionnaire to the remaining 80% of the collective. The Court has also taken use of the questionnaire into account when arriving at the fair and proportional number of 20%.

---

*O'Toole*, 2014 WL 1388660, at *4 (requiring responses from 33% of 700+ opt-ins); *Wellens v. Daiichi Sankyo Inc.*, No. C-13-00581-WHO (DMR), 2014 WL 7385990, at *4 (N.D. Cal. Dec. 29, 2014) (requiring responses from 40% of 248 plaintiffs).

[28] *Beltran*, 2018 WL 2045890, at *6 ("[T]he percentage of opt-in plaintiffs from which a defendant may seek discovery is inversely proportional to the size of the class; the larger the class, the smaller the percentage of the class sampled.").

[29] *See, e.g.*, *Nelson*, 2009 WL 4730166, at *3 (ordering discovery from roughly 7% of 1,328 opt-ins); *Smith*, 236 F.R.D. at 356 (ordering discovery from a representative sample 6% of 1500+ opt-in plaintiffs).

[30] The Court notes also that, according to Plaintiffs, this percentage will yield a margin of error of only 6% with a confidence level of 95%. This supports the Court's conclusion that a sample size of 20% is reasonable and adequate in this case.

Furthermore, the Court determines that the opt-in Plaintiffs to whom the written discovery will be directed shall be randomly selected. Plaintiffs suggested random or mutually-agreed selection. Defendants argue that they should be able to select the opt-ins in a manner that is proportional to the locations and business units. The Court finds persuasive *Rosenbohm*'s discussion on the importance of using random selection when striving to achieve a representative result.[31] Random selection is the best way to ensure that the result is truly representative of the collective as a whole.

Finally, the Court turns to the question of the scope of the proposed questionnaires. Both sides agree that simplified questionnaires may be sent to all opt-in Plaintiffs (or at least the remaining opt-ins who are not receiving full written discovery). They disagree about the number of questions that are proper on the questionnaire. The Court has reviewed both proposals and finds Defendants should be allowed to determine the questionnaire included in the discovery they issue, subject to applicable discovery rules. Defendants' proposal includes several questions to which Defendants should have the answers already, or could ascertain the answers at least as easily as Plaintiffs (*i.e.*, list the job title(s) you most recently held, as well as prior job title(s), along with your supervisor(s), duties, and dates). Burdening all opt-ins with questions of this nature likely will result in a lower response rate and impose a burden disproportional to the needs of the case and the value of the responses. Taking into account proportionality and the parties' relative access to the information requested,[32] the Court will not require Plaintiffs to answer

---

[31] 2019 WL 2141901, at *2 ("[A]ny non-random sampling method increases the likelihood that the sample will be biased and not accurately represent the larger population.") (citations omitted).

[32] *See* Fed. R. Civ. P. 26(b)(1).

questions 2, 3, and 4 on Defendants' proposed questionnaire. Defendants may serve their questionnaire, minus those questions, on all opt-in Plaintiffs not receiving full written discovery. The Court will not require a particular percentage of questionnaires to be returned. However, if the rate of return is less than 50%, the Court may later increase the number of Plaintiffs required to provide full written discovery responses, since the Court has taken into account the use of the questionnaire as a supplement when arriving at the appropriate percentage for written discovery.

For the above-stated reasons, the Court determines that written discovery limited to 20% of the opt-in Plaintiffs, chosen randomly across locations and business units, is sufficient and proportional to the needs of the case when supplemented by Defendants' abbreviated questionnaire sent to the remainder of the collective. The Court believes that the parameters set above will offer Defendants enough latitude to obtain meaningful written discovery responses without causing undue burden to Plaintiffs or their counsel. As with the deposition limits the Court previously imposed, these restrictions on written discovery will support the principles underlying the use of an FLSA collective action and promote efficiency and the realization of Rule 1 ideals.

**IT IS THEREFORE ORDERED** that Plaintiffs' Emergency Motion for Protective Order and for Order on Discovery Protocol (ECF No. 112) is granted.

**IT IS FURTHER ORDERED** that Defendants shall notify the Court within seven days of the date of this Memorandum and Order whether the rulings contained herein render moot Defendants' Motion to Compel Discovery (ECF No. 116).

**IT IS SO ORDERED.**

Dated May 31, 2021, at Kansas City, Kansas.

*Teresa J. James*
Teresa J. James
U.S. Magistrate Judge