UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS
KANSAS CITY DIVISION

| | |
|---|---|
| **JENNIFER JACKSON**, Individually and on behalf of all others similarly situated,<br><br>**Plaintiffs**<br><br>vs.<br><br>**U.S. BANCORP** and **U.S. Bank National Association,**<br><br>**Defendants** | Case No. 2:20-cv-02310-EFM-TJJ<br><br>JURY TRIAL DEMANDED<br><br>FLSA COLLECTIVE ACTION UNDER 29 U.S.C. § 216(B) |

## PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT AGREEMENT

Plaintiff Jennifer Jackson ("Plaintiff" or "Jackson"), individually and on behalf of all Opt-in Plaintiffs ("Opt-in Plaintiffs") (collectively, Plaintiffs), submits this unopposed motion for approval of the settlement of Plaintiffs' claims brought against U.S. Bancorp and U.S. Bank National Association (collectively "U.S. Bank" or "Defendants") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. The Settlement Agreement, attached as Exhibit 1, represents a fair and reasonable resolution of Plaintiffs' and Defendants' (collectively, the "Parties") *bona fide* dispute over the FLSA claims, and meets the standards for judicial approval. The Court should approve the Settlement Agreement in full.

The Settlement Agreement provides Plaintiffs with an exceptional recovery in light of the risks inherent in continued litigation and trial. Defendants have defended the claims asserted in this Lawsuit and continue to deny that they committed any wrongdoing or violated any state or federal wage and hour laws. Given the costs, risks, and delays inherent to protracted litigation balanced against the benefits of settlement, the Parties' Settlement Agreement is in both Parties' best interest.

Accordingly, the Parties respectfully request the Court approve the Settlement Agreement (Ex. 1) in full.

## I.
## PROCEDURAL HISTORY

On June 24, 2020, Jennifer Jackson and Markela Jones filed a collective/class action lawsuit in the United States District Court for the District of Kansas, Kansas City Division, styled *Jennifer Jackson, et al., v. U.S. Bancorp*, Case No. 2:20-cv-02310-EFM-TJJ (the "Lawsuit"). On September 4, 2020, Jennifer Jackson amended the Lawsuit and removed Markela Jones as a named plaintiff. Defendants filed their respective Answers to Plaintiff Jackson's First Amended Complaint on September 18, 2020. *See* ECF No. 31. Defendants denied Plaintiff's allegations and asserted numerous defenses to Plaintiff's claims. *See id.*

On November 10, 2020, the Court granted the Parties' Joint Stipulation Regarding Conditional Collective Action Certification and ordered that notice be sent to "all hourly call-center employees who worked for U.S. Bancorp and/or U.S. Bank National Association in positions that make and/or take queued outbound and/or inbound customer calls, anywhere in the United States, at any time from December 11, 2017 through the final disposition of this matter." *See* ECF No. 49. During the course of the Notice and Opt-In Period, 1,140 individuals filed consent forms to join this Lawsuit.

The Parties have engaged in extensive formal and informal discovery that has aided in the resolution of this matter. Indeed, the scope of discovery was hotly litigated. After the Parties extensively briefed the issue of representative discovery to the Court, Defendants served approximately 248 sets of formal written discovery on the representative plaintiffs. In addition to the formal written discovery previously discussed, each Opt-In Plaintiff was required to complete a written survey for Defendants. Plaintiff Jackson also served a full set of written discovery on Defendants. In addition to written discovery, Defendants deposed Plaintiff Jackson and nine (9) Opt-In Plaintiffs.

Throughout October and November of 2021, the Parties engaged in arms-length negotiations and ultimately entered into a Memorandum of Understanding ("MOU") regarding the resolution of this matter that addressed the principal terms of the agreement between them. The MOU was fully executed on November 30, 2021. On January 25, 2022, the Parties executed their formal Settlement Agreement (Ex. 1) that the Parties now request the Court approve. Specifically, the Parties reached the following settlement that resolved their *bona fide* dispute:

| | |
|---|---|
| Gross Settlement Amount: | $250,000.00 |
| Collective Counsel's Attorneys' Fees and Costs: | $100,000.00 |
| Plaintiff Jackson's Service Award: | $2,500.00 |

*See generally* Ex. 1.

## II.
## SUMMARY OF THE SETTLEMENT AGREEMENT'S KEY TERMS.

**A.    THE GROSS SETTLEMENT FUND**

The Parties agreed to settle Plaintiffs' FLSA claims for $250,000.00 (the "Gross Settlement Amount."). *Id.* at ¶ 2. The Gross Settlement Amount includes the settlement payments to Plaintiff Jackson and the Opt-in Plaintiffs, Collective Counsel's attorneys' fees and out-of-pocket litigation expenses, a Service Award to Plaintiff Jackson, and the costs of settlement administration. *Id.* The portion of the Gross Settlement Amount remaining after the above deductions, subject to Court approval, shall be the Net Settlement Amount. Defendants shall not make any payment beyond the Gross Settlement Amount.

**B.    IDENTIFICATION OF THE COLLECTIVE MEMBERS INCLUDED IN SETTLEMENT AGREEMENT**

The Settlement Agreement includes Plaintiff Jackson, the Opt-In Plaintiffs who have joined this Lawsuit (and have not been dismissed or otherwise withdrawn their consent), and the seven (7) individuals who originally opted into *Kaylee Dunham, et al. v. U.S. Bank National Association*, Case No.

3

1:21-cv-00353-MWM (S.D. Ohio) ("Dunham Lawsuit").[1] Together, these individuals (1,147 in total, including Plaintiff Jackson) make up the Settlement Collective Members. *See id.* at ¶ 1(c).

## C.  THE NET SETTLEMENT ALLOCATION

As discussed throughout, the Parties agreed to a *pro rata* allocation of the Net Settlement Amount based on the number of workweeks worked by the Plaintiffs during the applicable time period. Ex. 1 at ¶ 6. According to that formula, the Net Settlement Amount shall be divided into individual payments to each Settlement Collective Member ("Individual Settlement Payment"), which shall be determined pursuant to the following formula: (1) a $25.00 base award; plus (2) a *pro rata* share of the Net Settlement Amount less the $25.00 base award, based upon each Settlement Collective Member's number of workweeks within the period of December 11, 2017 to the date an order approving the settlement is entered.

## D.  LIMITED RELEASE OF WAGE AND HOUR CLAIMS AGAINST DEFENDANTS

The Settlement Agreement provides that

> [e]ach Settlement Collective Member will release all claims, rights, demands, liabilities and causes of action that are alleged, or reasonably could have been alleged based on the facts and claims asserted in the operative Complaints in the Lawsuit and the Dunham Lawsuit, including under the Fair Labor Standards Act ("FLSA"), and under the theories of *quantum meruit,* unjust enrichment, conversion, breach of contract, theft of labor, and any other state, federal, or local law related to the payment of wages, overtime, minimum wage, along with all claims for costs, attorneys' fees, expenses, liquidated damages, interest, or any other claims or benefits against the Releasees (the "Released Claims").

*Id.* at ¶ 12. Plaintiff Jackson also executed an Individual Release Agreement in her role as Named Plaintiff, and in further consideration for her Service Award. A copy of Plaintiff Jackson's Individual Release is hereby attached as Exhibit 2.  *See id.* at ¶ 11.

---

[1] There were seven (7) individuals who returned their Consent to Join Forms outside of the Notice Period and were therefore unable to participate in the Jackson Lawsuit. In order to preserve their claims, these individuals filed a subsequent action in the Southern District of Ohio (the Dunham Lawsuit) lodging the same claims against Defendants. The Dunham Lawsuit has been dismissed and these individual's claims are being resolved under this Settlement Agreement.

4

### E.    COLLECTIVE COUNSEL'S NEGOTIATED FEE AND COST AWARD

Under the Settlement Agreement, Collective Counsel shall receive their attorneys' fees and costs in the amount of $100,000.00, which is 40% of the Gross Settlement Amount.[2] *Id.* at ¶ 4. Although the attorney-client contract between Collective Counsel and Plaintiff Jackson entitles Collective Counsel to recover their out-of-pocket expenses in *addition* to 40% of the Gross Settlement Amount, Collective Counsel is not seeking to recover their expenses separately.

### F.    SERVICE AWARD FOR PLAINTIFF JACKSON

Pursuant to the terms of the Settlement Agreement, and subject to Court approval, Plaintiff Jackson will receive a $2,500.00 Service Award in recognition of the time and effort she expended on behalf of the collective, as well as for her execution of a general release in her Individual Settlement Agreement.

### III.
### ARGUMENT & AUTHORITIES

### A.    THE LEGAL STANDARD FOR APPROVAL OF FLSA SETTLEMENTS

Under the FLSA, non-exempt employees must be paid overtime for all hours worked over forty (40) in a workweek. 29 U.S.C. § 207. An employer who violates the Act is liable for the unpaid overtime and may be liable for "an additional equal amount as liquidated damages" if the employer cannot "show to the satisfaction of the court that the act or omission giving rise to such action was in good faith." 29 U.S.C. §§ 216(b), 260. "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and

---

[2] The $100,000.00 amount sought as attorneys' fees and litigation expenses is significantly less than Collective Counsel's lodestar in this matter. *See* Declaration of Clif Alexander, attached as Exhibit 3. Collective Counsel has expended over 1,067 hours in the litigation of this matter, for a total lodestar amount of $366,160.00. *Id.* ¶ 18. Moreover, Collective Counsel's out of pocket expenses in this matter total over $42,728.87. Once expenses are deducted from the sought fee award, Collective Counsel will recover approximately $57,270.00 in fees—an amount that is less than 1/6th of Collective Counsel's lodestar.

5

costs of the action." *Id.* The statute of limitations for claims under the FLSA is two years, or three years if the employer's violation was willful. 29 U.S.C. § 255(a).

Courts have held that FLSA claims asserted in a private action may be compromised after the district court reviews and approves the terms of the settlement. *Morton v. Transcend Servs., Inc.*, No. 15-CV-1393-PAB-NYW, 2017 WL 977812, at* 1 (D. Colo. Mar. 13, 2017) (citing *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982)). "However, this extensive review of every FLSA settlement has never been required by the Tenth Circuit." *Lawson v. Procare CRS, Inc.*, No. 18-CV-00248-TCK-JFJ, 2019 WL 112781, at *2 (N.D. Okla. Jan. 4, 2019) (collecting cases). "Moreover, though Tenth Circuit district courts are split regarding the application of *Lynn's Food Stores* in this circuit, the majority of districts … have held that such approval is not necessary." *Id.* (collecting cases).

"Settlements may be permissible in the context of a suit brought by employees because initiation of the action . . . provides some assurance of an adversarial context." *Lynn's Food Stores*, 679 F.2d at 1354. "The employees are likely to be represented by an attorney who can protect their rights under the statute." *Id.* Under these circumstances, the court should approve a settlement that represents "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1354-55.

**B.   THE COURT SHOULD APPROVE THE PARTIES' SETTLEMENT**

   **1.   The Settlement Resolves a *Bona Fide* Dispute.**

"Parties requesting approval of an FLSA settlement must provide the court with sufficient information to determine whether a bona fide dispute exists." *Morton*, 2017 WL 977812, at *1 (citing *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1234 (M.D. Fla. 2010)). The Parties may satisfy this burden by presenting evidence showing: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the

6

disputed wages; and (5) if the Parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Id.*

US Bancorp, which does business as US Bank and, also, is the parent company of US Bank, is the fifth largest bank in the United States and provides its services throughout the country.[3] *See* ECF No. 31. Defendants employed the Settlement Collective Members to work in their call centers throughout the United States—specifically, answering phones and responding to and assisting Defendants' clients and customers. Plaintiffs contend that Defendants' policies and procedures (both written and unwritten) forced them to perform their preliminary work activities off-the-clock, and without compensation. Plaintiffs further contend they would perform up to four (4) hours of work a week that was both uncounted and unpaid. Defendants strongly contest that any work was performed by Plaintiff and the Settlement Collective Members off-the-clock. Indeed, the discovery performed in this action has revealed that Defendants have a policy and practice of adding an additional two minutes of paid time per day to each Settlement Collective Member's timecard and that at least some of the Settlement Collective Members have admitted under oath that they did not engage in any work tasks before clocking in that took more than two minutes to perform.

Because the Parties contest liability and the appropriate amount of overtime owed, if any, there is a *bona fide* dispute. The Parties acknowledge their claims and defenses pose risks, which informed, in part, their decision to resolve the *bona fide* disputes between them through settlement.

### 2. The Terms of the Settlement are Fair and Reasonable.

"To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales." *Solis v. Top Brass, Inc.*, No. 14-CV-00219-KMT, 2014 WL 4357486, at *3 (D. Colo. Sept. 3, 2014). Courts assessing an FLSA settlement for

---

[3] https://www.usbank.com/about-us-bank.html.

fairness and reasonableness often examine the following factors: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *McKeon v. Integrity Pizza LLC*, No. 18-CV-932-WJM-KLM, 2020 WL 6782238, at *2 (D. Colo. Nov. 18, 2020) (citing *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993), *abrogated on other grounds by Delvin v. Scardelletti*, 536 U.S. 1 (2002)); *Hoffman v. Poulsen Pizza LLC*, No. 15-2640-DDC-KGG, 2017 WL 25386, at *4 (D. Kan. Jan. 3, 2017) (citing *Barbosa v. Nat'l Beef Packing Co.*, 2014 WL 5099423, at *7 (D. Kan. Oct. 10, 2014)). "If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation." *Hoffman*, 2017 WL 25386, at *4.

### a. The Agreement Was Fairly and Honestly Negotiated.

First, the settlement was fairly and honestly negotiated by counsel highly experienced with FLSA collective actions. *See generally* Ex. 3. Prior to their good faith, arms-length settlement negotiations, the Parties exchanged substantial data showing the days and weeks worked and compensation received by Plaintiff Jackson and the Settlement Collective Members, as well as other information and documents regarding Defendants' practices, Plaintiffs' job duties, and Defendants' efforts to comply with the FLSA and related state wage and hour laws. *See id.* ¶¶ 19–20. The Parties created damages calculations based on this data. The Parties went through numerous offer and demand cycles over a two-month period. The negotiations by experienced wage and hour counsel demonstrate the Settlement Agreement was fairly and honestly negotiated. *See id.* at ¶ 20.

### b.     *The Ultimate Outcome of the Litigation Was (and Is) Unknown.*

Second, questions of law and fact exist as to whether Defendants are liable to Plaintiff Jackson and the Settlement Collective Members and, if so, in what amount(s). The Parties dispute the number of hours Plaintiffs worked off-the-clock, if any, whether Plaintiffs were properly paid under the FLSA, whether Defendants acted in good faith and thus whether liquidated damages are appropriate, and whether Defendants acted willfully (which would affect whether Plaintiffs may recover under a two-year or three-year statute of limitations). The proposed settlement allows the Parties to resolve these matters instead of litigating these uncertain legal and factual issues.

### c.     *The Value of the Settlement to the Plaintiffs Is Significant.*

Third, the immediate recovery offered by the proposed Settlement Agreement is even more valuable considering the legal and factual uncertainties related to the alleged liability and damages. If the Parties continue to litigate the matter instead of settling, the next steps will require the Parties to engage in additional lengthy and costly discovery, disputes and motion practice regarding decertification, which would likely be followed by cross-motions for summary judgment, and potential trial on liability and damages. *See id.* ¶ 21. Instead of undertaking this protracted litigation course which may result in no recovery, the proposed settlement guarantees Plaintiff Jackson and the Settlement Collective Members will receive a substantial recovery.

Indeed, the degree of uncertainty here is high because Defendants vigorously contested Plaintiff Jackson and the Settlement Collective Members' claims, denied that these hourly call-center employees were improperly paid or that any alleged damages are owed. Defendants also denied that Plaintiff Jackson and the Settlement Collective Members are entitled to liquidated damages or that they acted willfully.

Even though this case was hotly contested, the Net Settlement Amount awards an

approximate average of $120.00 to each Settlement Collective Member.[4] This settlement represents substantial recovery considering Defendants' strong defenses to liability, the ongoing risks of litigation, and the real possibility of a protracted fight for allegedly unpaid overtime.

### d. The Parties Agree the Settlement Is Fair and Reasonable.

Fourth, the Parties agree that the settlement is fair and reasonable. Plaintiff Jackson, individually and on behalf of all Opt-In Plaintiffs, and Defendants, have all signed the Settlement Agreement. Collective Counsel represents and warrants that they have the authority to settle the claims of the Opt-in Plaintiffs and have signed the Settlement Agreement.

### e. The Attorneys' Fees Under the Agreement Are Reasonable.

Fifth, as discussed in greater detail *infra*, Collective Counsel's fee award is fair and reasonable. *See, e.g., Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019). The FLSA provides that the Court "shall … allow [plaintiff] a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b); *see Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300, 1308 (10th Cir. 2014); *Tabb v. Mentor Prot. Serv. LLC*, No. CIV-17-1139-D, 2018 WL 5269828, at *1 (W.D. Okla. Oct. 23, 2018). If the Court examines Collective Counsel's attorneys' fees, the Court should find they are within the customary fee range approved by courts in this Circuit (including in this District), and that the amount requested is fair and reasonable under the circumstances of this case. *See, e.g., McKinley v. Mid-Continent Well Logging Serv., Inc.*, No. CIV-14-649-M, ECF 48 (W.D. Okla. Mar. 2, 2016) (approving fee award of 40% of gross settlement fund); *see also McMillian v. BP Service, LLC,* 2020 WL 4015259, at *3 (D. Kan. 2020) ("a 40% fee is fair and reasonable")*; Ostrander v. Customer Eng'g Servs., LLC*, No. 15-CV-1476-PAB-MEH, 2019 WL 764570 *6 (D. Colo. Feb. 21, 2019) ("fees have ranged from 4 per cent to 58 per cent" of settlement fund).

---

[4] This average does not take into account the *pro rata* damage allocation, but is instead computed by dividing the estimated Net Settlement Amount by the number of Settlement Collective Members.

### C.     THE ATTORNEYS' FEES AND COSTS ARE REASONABLE.

Collective Counsel's request for attorneys' fees in the amount of $100,000 is reasonable, fair and an important provision of the Parties' agreement. Ex. 1 at ¶ 4. The FLSA provides "[t]he court … **shall**, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added); *see also Garcia*, 770 F.3d at 1308; *Tabb*, 2018 WL 5269828, at *1. As courts across the country have recently recognized, district courts need not examine a separately negotiate attorney's fee award under an FLSA settlement. *See, e.g., Barbee*, 927 F.3d 1024, 1027.[5]

Although an award of attorneys' fees under the FLSA is **mandatory**, district courts generally only examine (at most) whether the fee award in an FLSA settlement agreement is reasonable. *See Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 415 n.5 (1978) (recognizing that an award of fees and costs is "mandatory for prevailing plaintiffs" in FLSA actions); *Olivo*, 526 Fed. Appx. at 854 ("As prevailing parties on this claim, plaintiffs were entitled to an award of attorney's fees under 29 U.S.C. § 216(b)"); *Weiser v. Pathway Servs. Inc.*, No. 17-CV-673-GKF-FHM, 2019 WL 6723563, at *1 (N.D. Okla. Aug. 26, 2019) (same); *Ali v. Jerusalem Restaurant, Inc.*, No. 14-CV-00933-MEH, 2015 WL 1345326, at *5 (D. Colo. Mar. 23, 2015) (same). An award is reasonable if it is "adequately compensatory to attract competent counsel yet which avoids a windfall for lawyers."

---

[5] *See also Horton v. Right Turns Supply, LLC*, 455 F. Supp. 3d 202, 206 (W.D. Pa. 2020) (emphasizing the court "does not believe it has authority to review the attorneys' fees component" of an FLSA settlement); *Thompson v. Spa City Steaks, Inc.*, No. 6:17-CV-6055, 2019 WL 5653215, at *2 n.3 (W.D. Ark. Oct. 31, 2019) (refusing to review the attorney fee provision of the parties' FLSA settlement agreement because it lacked statutory authority to do so); *Donoho v. City of Pacific, Mo.*, No. 4:19-CV-186-NAB, 2019 WL 5213023, at *2 (E.D. Mo. Oct. 16, 2019) (refusing to review he attorney fee provision of the parties' FLSA settlement agreement because "the statute does not require approval of settled attorney's fees" and concluding that "[b]ecause the agreed fees are not so disproportionately exorbitant alone to indicate collusion when compared to the compensation paid to Plaintiffs, the settlement agreement – including attorney's fees – will be approved without inquiry or comment into the reasonableness of the attorneys' fees"); *cf. Fails v. Pathway Leasing LLC*, No. 18-CV-00308-CMA-NYW, 2018 WL 6046428, at *2 (D. Colo. Nov. 19, 2018) (FLSA settlements do not require court approval absent special circumstances).

*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

"The Tenth Circuit favors the common fund approach, as opposed to the lodestar method, because a percentage of the common fund is less subjective than the lodestar plus multiplier approach, matches the marketplace most closely, and is the better suited approach when class counsel is retained on a contingent fee basis, as in this case." *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 484 (10th Cir. 1998); *see Uselton v. Com. Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993); *Lucken Family Ltd. P'ship, LLP v. Ultra Res., Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL 5387559, at *2 (D. Colo. Dec. 22, 2010). In common fund cases, utilizing the percentage method to calculate attorney fee awards is the standard. *See Gottlieb v. Barry*, 43 F.3d 474, 482-83 (10th Cir. 1994). The percentage of the common fund method has the advantage of establishing reasonable expectations on the part of class counsel "as to their expected recovery," and encouraging early settlement before substantial fees and expenses have been accumulated. *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010).

In assessing the reasonableness of attorney fee awards in collective actions, some courts within the Tenth Circuit have considered twelve factors the Fifth Circuit outlined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), which include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Whittington v. Taco Bell of Am., Inc.*, No. 10-CV-01884-KMT-MEH, 2013 WL 6022972, at *5 (D. Colo. Nov. 13, 2013). Rarely are all *Johnson* factors applicable. *Id.* Considering the circumstances presented herein, Collective Counsel's requested

attorneys' fees and litigation expenses are imminently reasonable as both as a percentage of the total common settlement fund and under the *Johnson* factors.

> **1. FLSA Collective Actions are Inherently Complicated, and Collective Counsel is Experienced and Skilled in Handling the Same (Factors 2-4 and 9-10).**

Cases involving employee overtime rights are governed by highly technical and specialized state and federal wage statutes and regulations. *See, e.g., Whittington*, 2013 WL 6022972, at *6; *Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 479-80 (S.D.N.Y. 2013) ("[W]age and hour collective and class actions are, by their very nature, complicated and time-consuming"). Three fundamental questions governed this case: (1) whether the Plaintiff Jackson and the Settlement Collective Members performed work off-the-clock and without compensation; (2) whether time worked off-the-clock (if any) was compensable and (3) whether these questions could be resolved on a collective basis. Analysis of these questions and effective prosecution of these claims required not only extensive knowledge of applicable caselaw and regulations, but also insight on successfully litigating cases under the FLSA.

Collective Counsel's skill, knowledge, reputation, and experience (factors 2, 3, and 9) are beneficial in FLSA cases such as this. *See generally* Ex. 3. FLSA collective action cases such as this are the main focus of Collective Counsel's docket. Although Collective Counsel is based in Texas, Anderson Alexander, PLLC has a national docket of FLSA cases, with litigation across the United States. Ex. 2 at ¶¶ 4–17. Further, Collective Counsel has litigated hundreds of similar cases against call centers with tremendous success and has a specialized knowledge of the industry. *Id.* at ¶ 17.

Collective Counsel's experience has caused them to review and become familiar with a large body of documents and information concerning FLSA litigation, as well as the evidence and testimony necessary to the successful prosecution of FLSA collective actions, which benefits cases such as this, and maximizes the settlement value of the case. *Id.*

Especially considering the number of Plaintiffs, resolving the procedural issues, merits, and calculating damages is inherently risky, costly, and time-consuming. *See Whittington*, 2013 WL 6022972,

at *6. As courts in this Circuit have noted, attorneys handling such large classes are precluded by the ticking clock from taking other cases (factor 4), given that counsel took a chance on possible recovery in a contingent fee case rather than strictly working on an hourly basis. *Id.* Collective Counsel spent significant time and incurred out-of-pocket expenses, remuneration for which was entirely contingent on the outcome of the matter, thus making this case relatively undesirable (factor 10). *See Aragon v. Clear Water Prod. LLC,* No. 15-CV-02821-PAB-STV, 2018 WL 6620724, at *6 (D. Colo. Dec. 18, 2018). Indeed, the possibility existed in this case that no recovery would be made for the time and efforts exerted by Collective Counsel.

        **a.    The Time and Labor Required Was Substantial and Collective Counsel's Requested Costs Are Reasonable (Factors 1 and 7).**

Regarding the time and efforts required of Collective Counsel (factors 1 and 7), this matter has been pending for more than a year and a half. During this time, Collective Counsel, consisting of the eight (8) lawyers who worked on this Lawsuit, local counsel, and multiple staff members performed extensive work. *See* Ex. 3 at ¶ 18–20 (describing Collective Counsel's time and effort spent on this case). Indeed, Collective Counsel have invested 1,067.8 hours of time in this litigation. *Id.* ¶ 18. This represents a significant amount of time expended to reach resolution of this Lawsuit with a corresponding lodestar of $366,160.00. *Id.*

In addition, to-date Collective Counsel has incurred $42,728.87 in unreimbursed costs. *Id.* at ¶ 22 and Ex. A. "Expenses are compensable in a common fund case if the particular costs are the type typically billed by attorneys to paying clients in the marketplace." *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cty., Okla.*, 8 F.3d 722, 725-26 (10th Cir. 1993). Here, Collective Counsel's costs include reasonable out-of-pocket expenditures such as Court costs and filing fees, photocopying and duplication, fees for the distribution and processing of collective notice, postage, and other delivery or service fees, PACER charges, and legal research. *Id.* These are the types of costs normally billed to clients. *See Aragon*, 2018 WL 6620724, at *7; *In re Crocs, Inc. Sec. Litig.*, No. 07-CV-02351-PAB-KLM,

2014 WL 4670886, at *5 (D. Colo. Sept. 18, 2014). Although these expenses were reasonable and necessary for the successful prosecution of this case, Collective Counsel is not seeking to recover costs outside of negotiated $100,000.00 fee award.

      **b.**    **Collective Counsel Represented Plaintiff Jackson and the Settlement Collective Members on a Contingency Basis (Factors 5, 6, 10, 12).**

Next, the negotiated, and agreed upon, contingency fee (factors 5, 6, 10, and 12) in the contract between Plaintiff Jackson and Collective Counsel provides for a contingency fee of 40% of the gross settlement amount. Ex. 3 at ¶ 23. Collective Counsel, working on contingency, had 100% of the risk of loss, advanced considerable costs, which if not recovered, would be lost, and Collective Counsel would have carried various advanced costs, as well as unrecoverable time spent. *Id.* Collective Counsel assumed an enormous risk prosecuting this matter since there was a possibility of no recovery. *Id.*

Courts have consistently found this type of fee arrangement, under which counsel runs a significant risk of nonpayment, weighs in favor of the reasonableness of a requested fee award. *See, e.g., Aragon*, 2018 WL 6620724, at *6; *Shaw v. Interthinx, Inc.*, 2015 WL 1867861, at *4 (D. Colo. 2015). The "process of reviewing and approving stipulated attorneys' fees in the event of a settlement [of FLSA claims] is more deferential than resolving attorneys' fees in a disputed case." *Melgar v. OK Foods*, 902 F.3d 775, 779-80 (8th Cir. 2018). In particular, "where the parties have already agreed upon the fees to be paid, any required review need not be a line-by-line, hour-by-hour review of the attorneys' fees." *Id.* at 779. To the contrary, the review of FLSA settlements "requires … deference … to the parties' agreement." *Id.*

      **c.**    **Collective Counsel's Requested Fee is Within the Customary Range (Factors 5, 6, 12).**

As discussed *supra* in Section III(B)(ii)(e), Collective Counsel's request for attorneys' fees in the amount of 40% of the Gross Settlement is well within the range of reasonableness for contingency fee cases in this Circuit and is significantly less than Collective Counsel's lodestar. Ex. 3, ¶ 18–20.

### d. Degree of Success Obtained is High (Factor 8).

Finally, "the most critical factor in determining a fee award is the degree of success obtained". *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir. 2003). As discussed *supra* in Section 3(B)(ii)(c), the degree of success here is high and supports Collective Counsel's attorneys' fees.

For these reasons, Collective Counsel's negotiated fee of 40% and is reasonable and necessary in this case.

## D. THE COURT SHOULD APPROVE PLAINTIFF JACKSON'S SERVICE AWARD.

Plaintiff Jackson's requested Service Award is reasonable, and Defendants do not object to the same. Plaintiff Jackson is able to receive a reasonable incentive payment as part of a class or collective action settlement. *See, e.g.*, *Chieftan Royalty Co. v. Enervest Energy Institutional Fun XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017); *Gundrum v. Cleveland Integrity Servs., Inc.*, No. 17-CV-55-TCK-tlw, 2017 WL 3503328, at *5 (N.D. Okla. Aug. 16, 2017) (granting FLSA named plaintiffs normal service awards of $20,000); *Shaw*, 2015 WL 1867861, at *1 (approving $10,000 incentive award to named plaintiff in wage and hour dispute); *see also Lucken*, 2010 WL 5387559, at *8 (approving $10,000 service award to named plaintiff).

## IV.
## CONCLUSION.

For all the reasons set forth herein, Plaintiff Jackson respectfully requests the Court approve the Parties' Settlement Agreement (Ex. 1) in full.

| | |
|---|---|
| Dated: February 14, 2022 | Respectfully submitted, |
| By:_/s/ Richard M. Paul III_<br>Richard M. Paul III (KS #17778)<br>Laura C. Fellows (KS #26201)<br>**PAUL LLP**<br>601 Walnut Street, Suite 300<br>Kansas City, Missouri 64106<br>Telephone: (816) 984-8100<br>Fax: (816) 984-8101<br>Rick@PaulLLP.com<br>Laura@PaulLLP.com | **ANDERSON ALEXANDER, PLLC**<br>Clif Alexander (_Pro Hac Vice_)<br>Texas Bar No. 24064805<br>Austin W. Anderson (_Pro Hac Vice_)<br>Texas Bar No. 24045189<br>819 North Upper Broadway<br>Corpus Christi, Texas 78401<br>Telephone: (361) 452-1279<br>Fax: (361) 452-1284<br>clif@a2xlaw.com<br>austin@a2xlaw.com |
| | **Counsel for Plaintiffs** |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies on February 14, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

_/s/ Richard M. Paul III_