**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

JENNIFER JACKSON, *Individually*
*and on behalf of all others similarly situated,*

      *Plaintiffs,*

    vs.

U.S. BANCORP *and*
U.S. BANK NATIONAL ASSOCIATION,

      *Defendants.*

Case No. 20-2310-EFM

FLSA COLLECTIVE ACTION
UNDER 29 U.S.C. § 216(b).

**MEMORANDUM AND ORDER**

Plaintiff Jennifer Jackson brings this collective action against Defendants U.S. Bancorp and U.S. National Bank Association under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"). The matter currently before the Court is the Plaintiff's Unopposed Motion for Approval of FLSA Settlement Agreement (Doc. 171). For the reasons set forth below, the Court grants Plaintiff's motion.

## I.      Factual and Procedural Background

Plaintiff commenced this collective/class action on June 24, 2020. The Court granted the Parties' Joint Stipulation Regarding Conditional Collective Action Certification on November 10, 2020, and ordered that notice be sent to "all hourly call-center employees who worked for U.S. Bancorp and/or U.S. Bank National Association in positions that make and/or take queued

outbound and/or inbound customer calls, anywhere in the United States, at any time from December 11, 2017 through the final disposition of this matter." This Order expressly granted conditional certification "only for purposes of facilitating a potential prompt and efficient resolution of this matter," and rendered no judgment on whether the call-center employees were similarly situated.

Since then, 1,140 persons have filed consent forms to opt in to the collective action. Combined with the seven individuals who opted in to companion litigation,[1] there are 1,147 members of the Settlement Collective.

The Parties have engaged in extensive litigation, including contesting the appropriate scope of discovery. The discovery, formal and informal, has been extensive. Plaintiff Jackson also served a full set of written discovery on Defendants. Defendants have served approximately 248 sets of formal written discovery in return. Each opt-in Plaintiff has been required to complete a written survey for Defendants, and Defendants have deposed Plaintiff Jackson and nine opt-in Plaintiffs.

The Parties engaged in extensive arms-length negotiations before entering into a November 30, 2021 Memorandum of Understanding ("MOU") regarding the resolution of this matter that addressed the principal terms of the agreement between them. On January 25, 2022, the Parties executed their formal Settlement Agreement. (Doc. 171-1).

During the negotiations, the parties exchanged substantial data showing the days and weeks worked and compensation received by Plaintiff Jackson and the Settlement Collective members, including extensive documentation relating to Defendants' practices, members' job

---

[1] *Dunham v. U.S. Bank National Ass'n*, No. 21-0353-MWM (S.D. Ohio).

duties, and Defendants' efforts to comply with the FLSA and related state wage and hour laws. Based on this data, the parties created damages calculations and exchanged numerous offer and demand communications over a two-month period.

The Agreement provides for the following settlement:

| | |
|---|---|
| Gross Settlement Amount: | $250,000.00 |
| Collective Counsel's Attorneys' Fees and Costs: | $100,000.00 |
| Plaintiff Jackson's Service Award: | $2,500.00 |

Under the settlement, each member will receive a *pro rata* allocation of the Net Settlement Amount based on the number of workweeks worked by that member during the applicable time period. The Net Settlement Amount is divided into individual payments to each Settlement Collective Member, including: (1) a $25.00 base award, and (2) a *pro rata* share of the Net Settlement Amount less the base award, derived from the number of weeks worked within the period of December 11, 2017 to the date of the order approving the settlement. The parties estimate that members will receive an average award of around $120.

Plaintiff Jackson also executed an Individual Release Agreement in her role as Named Plaintiff, and in further consideration for her Service Award. In addition, the Settlement Agreement provides:

Each Settlement Collective Member will release all claims, rights, demands, liabilities and causes of action that are alleged, or reasonably could have been alleged based on the facts and claims asserted in the operative Complaints in the Lawsuit and the Dunham Lawsuit, including under the Fair Labor Standards Act ("FLSA"), and under the theories of quantum meruit, unjust enrichment, conversion, breach of contract, theft of labor, and any other state, federal, or local law related to the payment of wages, overtime, minimum wage, along with all claims for costs, attorneys' fees, expenses, liquidated damages, interest, or any other claims or benefits against the Releasees (the "Released Claims").

The Settlement Agreement expressly refrains from any resolution of the propriety of collective treatment of the action under the FLSA.

-3-

The Parties further agree that this Settlement Agreement does not constitute a determination or admission that any group of similarly situated employees exists to maintain a collective action under the FLSA, and in the event that this Settlement Agreement or a subsequent settlement in the Lawsuit by the Parties is not approved by the Court, the Parties agree that they will return to the status quo ante and that Defendant may argue that collective treatment is not proper under the FLSA.

## II.     Legal Standard

A settlement of claims under the FLSA must be presented to the Court for review and determination of whether the settlement is fair and reasonable.[2]  To approve an FLSA settlement, "the Court must find that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties concerned."[3]  "The Court may enter a stipulated judgment only after scrutinizing the settlement for fairness."[4]  "If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation."[5]  The settlement agreement must also contain an award of attorneys' fees.[6]  Unlike class actions brought pursuant to Fed. R. Civ. P. 23, an FLSA collective action settlement may be approved without a separate fairness hearing.[7]

---

[2] *See, e.g., Peterson v. Mortg. Sources Corp.*, 2011 WL 3793963, at *4 (D. Kan. 2011) (*citing Lynn's Food Stores, Inc., v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)).

[3] *Id*. (citation omitted).

[4] *Id*.

[5] *Hoffman v. Poulson Pizza*, 2017 WL 25386, at *2 (D. Kan. 2017) (quotation marks and citation omitted).

[6] *Peterson*, 2011 WL 3793963, at *5; *see* 29 U.S.C. § 216(b).

[7] *Flerlage v. US Foods, Inc.*, 2020 WL 4673155, at *10 (D. Kan. 2020).

Although courts have often suggested that a final collective certification is a prerequisite for FLSA settlement approval,[8] a key authority underlying this line of decisions required this certification in the course of upholding a settlement of a Title VII discrimination class action under Rule 23.[9] "Rule 23 actions are fundamentally different from collective actions under the FLSA."[10] "Because the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective from bringing their own suits in the future, FLSA collective actions do not implicate the same due process concerns as do Rule 23 actions."[11] Settlement of an action under FLSA cannot bind persons who have not affirmatively opted into the action.[12] Thus, some of courts have expressly recognized that approval of an FLSA settlement does not require final approval of a collective action.[13]

### III.    Analysis

After reviewing the parties' joint submission, the Court concludes that the Settlement Agreement should be approved.

First, the settlement resolves a bona fide dispute. Plaintiffs allege the entity operated by Defendants, US Bank, violated the FLSA by failing to pay call-center workers required overtime

---

[8] *See, e.g., McCaffrey v. Mortg. Sources Corp.*, 2011 WL 32436, at *3 (D. Kan. 2011).

[9] *See Staton v. Boeing*, 327 F.3d 938 (9th Cir. 2003).

[10] *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013).

[11] *Kujat v. Roundy's Supermarkets Inc.*, 2021 WL 4551198, at *1 (N.D. Ill. 2021).

[12] *Grewe v. Cobalt Mortg.*, 2016 WL 4014114, at *4 (W.D. Wash. 2016) ("an FLSA settlement binds only those who affirmatively opt in"). *See also Seawell v. Konza Prairie Pizza, Inc.*, 2021 WL 3771690, at *5 (D. Kan. Aug. 25, 2021) (rejecting class notice which purported to "bind all members of the Class who have not excluded themselves, which is contrary to FLSA collective action opt-in procedures"); *Robinson v. Flowers Baking Co. of Lenexa*, 2017 WL 4037720, at *1 (D. Kan. 2017) (same).

[13] *See Johnston v. N. Fla. Reforestation Servs.*, 2021 WL 6205946, at *1 n. 2 (M.D. Fla. 2021); *Urbas v. Nutritious Lifestyles, Inc.*, 2020 WL 264686, at *3 n. 2 (M.D. Fla. 2020); *Metzler v. Med. Mgmt. Int'l*, 2020 WL 5994537, at *1-2 (M.D. Fla. 2020); *Banks v. Pyramid Consulting, Inc.*, 2019 WL 3328493, at *1 (S.D. Cal. 2019) (approving FLSA settlement without certifying collective action).

pay pursuant to 29 U.S.C. § 207.  US Bank is the fifth largest bank in the United States and provides its services throughout the nation.  Plaintiffs claim that the rules and procedures at US Bank required them to perform some work activities before or after clocking in, without compensation.  Defendants deny these allegations, and argue the bank in fact added two minutes of paid time each day to workers' time cards to compensate for such activities, and note testimony of some members in depositions stating their off-the-clock activities took no more than two minutes.

The results of the settlement are fair and reasonable.[14]  "To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales."[15]  The settlement was derived from active and fair negotiations between the parties, the parties urge the adoption of the settlement, serious questions of law and fact surround the outcome, and the alternative to the present settlement is protracted and expensive litigation.

As set forth earlier, the settlement resulted after extensive negotiations over a two-month period.  The parties actively contest the issues in the action, and the ultimate outcome is unclear. Continued, protracted litigation will be expensive, with no certain result.  Indeed, given the defenses advanced by Defendants, continued litigation may ultimately result in no recovery at all for members of the Settlement Collective.  In contrast, the present settlement offers members an award which is both definite and valuable.

The Settlement Agreement provides for reasonable attorneys' fees.  To determine an award's reasonableness, "[t]he Tenth Circuit applies a hybrid approach, which combines the

---

[14] *See Barbosa v. Nat'l Beef Packing*, 2014 WL 5099423, at *7 (D. Kan. 2014).

[15] *Solis v. Top Brass, Inc.*, 2014 WL 4357486, at *3 (D. Colo. 2014).

-6-

percentage fee method with the specific factors traditionally used to calculate the lodestar."[16] This hybrid approach allows the court to consider the factors articulated in *Johnson v. Georgia Highway Express*,[17] including (1) time and labor required; (2) novelty and difficulty of the questions presented in the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. "[R]arely are all of the *Johnson* factors applicable."[18]

The $100,000 fee provided in the agreement is 40% of the Gross Settlement Amount, a percentage deemed fair and reasonable in other FLSA actions.[19]  "[F]actually complicated 'off-the-clock' claims [under the FLSA] are difficult to prove," and warrant corresponding compensation.[20]  Counsel for the Settlement Collective specialize in FLSA actions, have a nationwide practice, and have pursued hundreds of similar cases involving call-center workers. In addition to their demonstrated expertise and experience in these matters, counsel assumed a substantial risk in taking this matter on a contingency basis.  Finally, at the time of the motion, counsel had expended 1,067.8 hours in the course of the present action.  Given the respective

---

[16] *Barbosa v. Nat'l Beef Packing*, 2015 WL 4920292, at *7 (D. Kan. 2015)..

[17] 488 F.2d 714 (5th Cir. 1974).

[18] *Uselton v. Comm. Lovelace Motor Freight*, 9 F.3d 849, 853 (10th Cir. 1993) (implying preference for the percentage of the fund method) (citation omitted).

[19] *See, e.g., McMillan v. BP Serv., LLC*, 2020 WL 4015259, at *3 (D. Kan. 2020).

[20] *Alewel v. Dex One Serv*., 2014 WL 502349, at *2 (D. Kan. 2014).

hourly rates for individual attorneys, counsel for the Settlement Collective would have earned a lodestar fee of $366,160. In addition, counsel has incurred $42,728.87 in unreimbursed costs. The Attorney Fee and Costs Award of $100,000 in the Settlement Agreement thus represents approximately a quarter of the fees and costs which could be considered appropriate under a loadstar calculation.

Last, the Settlement Agreement includes a $2,500 Incentive Award to Named Plaintiff Jackson. This is within the range of similar incentive awards.[21]

**THEREFORE**, the Court issues the following findings, rulings, and orders:

1.  Plaintiffs' Unopposed Motion for Approval of FLSA Settlement Agreement (Doc. 171) is **GRANTED**.

2.  The Settlement Agreement resolves a *bona fide* dispute.

3.  The terms of the Settlement Agreement are fair and reasonable.

4.  The Settlement Agreement is **APPROVED**, including but not limited to (a) the allocation formula by which the Individual Settlement Payments to Plaintiffs will be determined; (b) the time-line as set forth in the Settlement Agreement; (c) the retention of Rust Consulting, Inc., as the settlement administrator, (d) the Collective Counsel's Attorney's Fees and Costs; and (e) the Service Award to Named Plaintiff Jackson.

5.  The Individual Release Agreement between Named Plaintiff Jackson and Defendants (Exhibit A(2) to the Settlement Agreement) is **APPROVED**.

6.  The Court **DISMISSES WITH PREJUDICE** the Plaintiffs listed in Exhibit A(1) to the Settlement Agreement.

7.  The Court further **DISMISSES WITH PREJUDICE** this action.

---

[21] *See Chieftain Royalty Co. v. Enervest Energy Inst'l Fund XIII-A*, 888 F.3d 455, 468 (10th Cir. 2017) ("[C]ourts regularly give incentive awards to compensate named plaintiffs for the work they performed—their time and effort invested in the case."); *Bruner v. Sprint/United Mgmt. Co.*, 2009 WL 2729911, at *3 (D. Kan. 2009) (authorizing awards of $2,500 and $5,000).

8.      Without affecting the finality of this Order in any way, the Court retains continuing and exclusive jurisdiction over this action for the purpose of administration and enforcement of the Settlement Agreement.

**IT IS SO ORDERED.**

Dated this 11th day of March, 2022.


ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE